1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ROBERT MCDANIELS,                        No.  2:16-cv-0184 KJN P

12               Petitioner,

13         v.                                  ORDER

14    JENNIFER BARRETTO,

15               Respondent.

16

17    I.  Introduction

18         Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

19    habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2012 conviction for

20    possessing marijuana while inside a penal institution.  Petitioner was sentenced to three years in

21    state prison.  Petitioner claims that the trial court violated his Sixth and Fifth Amendment rights

22    by limiting cross-examination of a witness.  Both parties consented to proceed before the

23    undersigned for all purposes.  See 28 U.S.C. § 636(c).

24         After careful review of the record, this court concludes that the petition should be denied.

25    II.  Procedural History

26         Petitioner was serving an indeterminate sentence of twenty-five years to life for a 2001

27    conviction for first degree murder at the time he was charged with possession of marijuana.  (CT

28    57-58.)  On September 18, 2012, a jury found petitioner guilty of possession of marijuana while

                                         1

1   inside a penal institution, and the jury found true a prior prison term enhancement. (Clerk's

2   Transcript ("CT") 83.) On November 30, 2012, petitioner was sentenced to three years in state

3   prison for the possession offense, to run consecutively with the indeterminate life sentence. (CT

4   145.) The trial court declined to dismiss the prior prison term enhancement but also declined to

5   impose the additional one-year penalty. (Id.)

6        Petitioner appealed the conviction to the California Court of Appeal, Third Appellate

7   District. On October 24, 2014, the Court of Appeal modified the judgment of conviction by

8   striking the prior prison term allegation, but affirmed the judgment as modified. (Respondent's

9   Lodged Document ("LD") No. 4.)

10       Petitioner filed a petition for review in the California Supreme Court, which was denied

11  on January 14, 2015. (LD Nos. 5-6.)

12       On February 11, 2016, petitioner filed a petition for writ of habeas corpus in the

13  Sacramento County Superior Court. (LD No. 7.) On June 13, 2016, the superior court denied the

14  petition on procedural and substantive grounds. (LD No. 8.)

15       No additional state habeas petitions were filed.

16       Petitioner filed the instant petition on April 12, 2016. (ECF No. No. 7.)

17  III.  Facts[1]

18       In its unpublished opinion affirming petitioner's judgment of conviction on appeal, the

19  California Court of Appeal for the Third Appellate District provided the following factual

20  summary:

21                                  FACTS[FN 2]

22           On May 19, 2011, defendant was an inmate at Folsom State Prison
             serving a sentence for first degree murder. At 1:30 a.m., correctional
23           officers Carrillo and Guzman approached the cell containing
             defendant and another inmate. Correctional Officer Hampton
24           provided light from her flashlight as the other officers entered the
             cell. As the duo entered, defendant rose up from his lying position on
25           the upper bunk bed, reached to a shelf at the rear of the cell, grabbed
             an object, and stuck it in his mouth. Officer Guzman ordered him to

26

27  [1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate
    District in People v. McDaniels, No. C072707 (October 24, 2014), a copy of which was lodged
28  by respondent as LD 4.

                                          2

spit out whatever he had put in his mouth. Defendant opened his mouth and Officer Guzman noted that it was empty.

Defendant was handcuffed, escorted to an administrative segregation unit, and placed on contraband surveillance watch -- an around the clock observation that continues until the ingested object passes from the body.

More than four days later, defendant informed Correctional Officer Lofton that he needed to make a bowel movement. After defendant defecated into a plastic bag, Officer Lofton sorted through the feces and found a small balloon. Inside the balloon she found some plastic wrap that contained a green leafy substance. Officer Lofton weighed the balloon and separately weighed its contents.

Officer Hampton transported the evidence to the Sacramento County Crime Laboratory for examination. She also transported the evidence to a forensic laboratory for testing by the defense. Finally, she transported the evidence to court for presentation at trial.

Tests performed on the substance at the Sacramento County Crime Laboratory confirmed that it was marijuana with a net weight of 0.11 grams. The defense testing at another forensic laboratory, in West Sacramento, was apparently inconclusive. Even so, defendant raises no issue of the matter here.

[FN2: Our statement of facts taken from the prosecution's case at trial is limited to the marijuana offense and does not include possible prison rule violations by defendant.]

People v. McDaniels, No. C072707, slip op. at 2-3 (Cal. Ct. App. Oct. 24, 2014)

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

3

1    determined by the Supreme Court of the United States; or

2         (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the
3         State court proceeding.

4    28 U.S.C. § 2254(d).

5         For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

6    holdings of the United States Supreme Court at the time of the last reasoned state court decision.

7    Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct.

8    38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v.

9    Taylor, 529 U.S. 362, 412 (2000)).  Circuit court precedent "may be persuasive in determining

10   what law is clearly established and whether a state court applied that law unreasonably."  Stanley,

11   633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

12   precedent may not be "used to refine or sharpen a general principle of Supreme Court

13   jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  Marshall

14   v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155

15   (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so

16   widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

17   be accepted as correct.  Id.  Further, where courts of appeals have diverged in their treatment of

18   an issue, it cannot be said that there is "clearly established Federal law" governing that issue.

19   Carey v. Musladin, 549 U.S. 70, 77 (2006).

20        A state court decision is "contrary to" clearly established federal law if it applies a rule

21   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

22   precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

23   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

24   writ if the state court identifies the correct governing legal principle from the Supreme Court's

25   decisions, but unreasonably applies that principle to the facts of the prisoner's case. [2]  Lockyer v.

26   ───────────────────
     [2]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
27   overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
     presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,
28   384 F.3d 628, 638 (9th Cir. 2004)).

1  Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d

2  997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply

3  because that court concludes in its independent judgment that the relevant state-court decision

4  applied clearly established federal law erroneously or incorrectly.  Rather, that application must

5  also be unreasonable."  Williams v. Taylor, 529 U.S. at 411.  See also Schriro v. Landrigan, 550

6  U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its

7  'independent review of the legal question,' is left with a 'firm conviction' that the state court was

8  "'erroneous.'").  "A state court's determination that a claim lacks merit precludes federal habeas

9  relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

10  decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541

11  U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal

12  court, a state prisoner must show that the state court's ruling on the claim being presented in

13  federal court was so lacking in justification that there was an error well understood and

14  comprehended in existing law beyond any possibility for fair-minded disagreement."  Richter,

15  562 U.S. at 103.

16      If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

17  court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

18  527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

19  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

20  § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

21  considering de novo the constitutional issues raised.").

22      The court looks to the last reasoned state court decision as the basis for the state court

23  judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

24  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

25  previous state court decision, this court may consider both decisions to ascertain the reasoning of

26  the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

27  federal claim has been presented to a state court and the state court has denied relief, it may be

28  presumed that the state court adjudicated the claim on the merits in the absence of any indication

5

or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 101. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

////

1     When it is clear, however, that a state court has not reached the merits of a petitioner's

2     claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

3     habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

4     F.3d 1099, 1109 (9th Cir. 2006).

5     V.  Petitioner's Claims

6            A.  Limit on Cross-Examination – Alleged Sixth Amendment Violation

7                 1.  The Parties' Positions

8            Petitioner claims that the trial court violated his Sixth Amendment right to confront

9     witnesses by limiting his cross-examination of Officer Patricia Hampton, an evidence officer at

10    Folsom State Prison responsible for retrieving, maintaining, and transporting evidence collected

11    in the prison.  During cross-examination, petitioner's counsel elicited testimony regarding

12    Hampton's involvement in the search of petitioner's cell, and petitioner argues that Hampton

13    voluntarily testified that she was searching a different cell at the same time she was searching

14    petitioner's cell.  (ECF No. 7 at 11; 24 at 19.)  Petitioner argues that because Hampton

15    volunteered such information, petitioner should have been allowed to cross-examine her on the

16    issue of such timing in an effort to demonstrate she was not a credible witness.  (ECF No. 24 at

17    17, 20, 24-25.)  Thus, petitioner contends that such limitation violated his confrontation rights.

18    He also argues that he should have been permitted to question Hampton concerning what other

19    contraband was discovered that day, particularly where Officer Lofton testified the wrapper

20    sealing the contraband found in petitioner's feces was a different color from the color she

21    remembered.  (ECF No. 7 at 12-13.)  He also argues he should have been able to cross-examine

22    Hampton on the proximity, amount and size of other discovered contraband, in an effort to further

23    dispute the variations in weight of the contraband discovered in petitioner's feces.  (ECF No. 7 at

24    14.)  Petitioner argues that the limit on Hampton's cross-examination deprived the jury from

25    hearing any discrepancies that may have been elicited.  (ECF No. 7 at 15.)  Petitioner contends

26    that such limitation had a substantial and injurious effect on the verdict.  (ECF No. 24 at 26.)

27           Respondent counters that the state court's rejection of petitioner's Sixth Amendment

28    claim was not unreasonable or contrary to Supreme Court precedent.  First, respondent argues

7

that to the extent defense counsel was barred from introducing Hampton's report from an unrelated cell search, there is no clearly established Sixth Amendment right to introduce extrinsic evidence for impeachment purposes. (ECF No. 17 at 16.) Second, respondent contends that the excluded report did not impeach Hampton's testimony, citing the trial judge's explanation that there was "no necessary discrepancy between the times indicated because [Officer Hampton] did not say, nor did she claim under oath, that she stood by, stationary, in a single position or within a few feet within a particular time period." (ECF No. 17 at 16, citing RT 72-73.) Third, respondent argues the excluded report was not relevant because Hampton did not testify as a percipient witness to any of the events leading up to the marijuana seizure. (ECF No. 17 at 16.) Rather, Officer Guzman described how petitioner swallowed the cellophane ball just after Guzman entered the cell to conduct the search. (Id., citing RT 85-88.) Officer Lofton testified that she recovered the cellophane ball from petitioner's feces. (Id., citing RT 98-100.) Criminalist Anderson testified that the contents of the cellophane ball testified positive for marijuana with a net weight of .11 grams (Id., citing RT 120-21.) Because any possible time discrepancy had no relevance to the question of whether the contraband seized constituted a sufficient amount of marijuana to fall within the criminal statute, respondent argues that the trial court properly excluded the cross-examination of Hampton.

Fourth, respondent maintains that defense counsel expressly denied that there were any issues surrounding evidence tampering or questions concerning chain of custody of the evidence; thus, petitioner's claim that the omitted cross-examination could have revealed other defects in Hampton's credibility is mere speculation. (ECF No. 17 at 17.) Finally, respondent notes that the trial court found defense counsel's failure to provide pretrial discovery of the excluded report to be "completely inappropriate," but that even if discovery was not "technically" required, the report was properly excluded as irrelevant, and "far outweighed by the possibility of confusion or other things." (Id., citing RT 73, 74, 76-77, 137.) Respondent contends that such legitimate concerns supported the trial court's decision to exclude the report and limit cross-examination of Hampton.

////

1   In the alternative, respondent argues that any possible error in limiting the cross-

2   examination of Hampton was harmless error because it had no adverse effect on the jury's

3   verdict.

4           2.  The State Court Decision

5           The last reasoned rejection of petitioner's first claim is the decision of the California

6   Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state appellate

7   court addressed this claim as follows:

8           Defendant contends the trial court erred when it limited his right to
        cross-examine and impeach Officer Hampton, whom he terms a
9           "percipient witness." He claims further cross-examination "could
        have revealed other defects in her credibility, knowledge, and
10          recollection, perhaps as it relates to her maintenance of the
        evidence's chain of custody." We disagree.

11
        A. Background
12
        Officer Hampton was the prosecution's first witness at trial.
13          Defendant sought to impeach her based on a time discrepancy in
        reports that appeared to put Officer Hampton in two places within
14          the prison cell block at or near the same time. In his cross-
        examination, defense counsel asked Officer Hampton if she
15          remembered the date of the search. Examining her report, she stated
        it was "May 19th, 2011, at approximately 1:30 a.m., in the morning."
16          After establishing that defendant was in cell C-507 on the fifth tier,
        defense counsel asked, "And you stayed there from approximately
17          1:30 to approximately 2:15; is that correct?" Officer Hampton
        answered, "I believe I was there even longer than that. 2:15 is the
18          time that I discovered the cell phone and charger in cell number 7."

19          Defense counsel later sought to introduce a document not previously
        disclosed to the prosecution. Cross-examination was halted and
20          counsels met with the trial court in chambers. Following the
        chambers session and out of the jurors' presence, the trial court
21          summarized the chambers session on the record.

22          The trial court noted that Officer Hampton was not involved in the
        search that yielded the marijuana. Her only involvement was shining
23          a flashlight to assist the searching officers. Later, Officer Hampton
        entered the cell and discovered a cellular telephone, another item of
24          contraband. In the court's view, "the finding of the cell phone, the
        fact of the cell phone, any administrative remedies that occurred as a
25          result of that piece of contraband, are completely irrelevant to the
        issues in this case." The court was "surprised that there was not a
26          relevance objection" to the cell phone evidence, which the court
        "would have sustained."

27
        The trial court explained that the document or "piece of paper in
28          question was about a paragraph long, appears to be a report, perhaps,

                                    9

generated by [Officer Hampton], regarding a cell search of another cell, of two inmates completely unrelated to this case, that the officer indicated began approximately at 2:00 o'clock." Defense counsel "indicated that he wished to cross-examine [Officer Hampton] regarding the possible discrepancy, as he described it, between her claim that she was involved in a cell search up on the floor involving this defendant versus a -- being involved in a cell search on another floor, perhaps, at the same time."

The trial court opined that there was "no necessary discrepancy between the times indicated" because "she did not say, nor did she claim under oath, that she stood by, stationary, in a single position or within a few feet within a particular time period."

The trial court next established that the timing of Officer Hampton's activities (other than holding the flashlight) was not relevant to defendant's possession of marijuana. The court noted there was no dispute that Officers Carrillo and Guzman observed defendant swallow a balloon, a balloon emerged from defendant's body, correctional officers collected the balloon, and the substance in the balloon was weighed at the county crime laboratory as well as the West Sacramento forensic laboratory. The defense was not claiming that Officer Hampton, who had transported the material, was somehow responsible for the different weights measured by the two laboratories.

After establishing these facts, the trial court ruled as follows: (1) the defense's failure to provide discovery of the report "until five seconds before" questioning Officer Hampton was "inappropriate"; (2) questioning Officer Hampton about her search of another cell "at or near the same time that this cell search occurred" is "not relevant"; and (3) even if the questioning was relevant, its probative value would be "far outweighed" by "the possibility of confusion or other things"; thus, the report would be excluded under Evidence Code section 352.

Returning to the question of relevance, the trial court explained that the evidence "simply has no bearing, none, on the issue in this case, which is, 'Did the defendant possess contraband?' Apparently, it is not disputed that he swallowed a balloon, that he excreted a balloon, that a balloon was collected from his body. The dispute is whether or not the contents of that balloon contained sufficient or appropriate controlled substance to have constituted a crime." Thus, the defense "efforts to raise side issues of this variety are not appropriate."

After defense counsel responded to the trial court's concern about the discovery violation, the trial court reiterated that questioning Officer Hampton about the timing of another cell search is "not relevant to any issues at issue in this case." The court reiterated that the defense was not making an argument that Officer Hampton somehow tampered with the evidence during the various transportations. Absent such an argument, the timing of the cell searches "does not speak to [Officer Hampton's] credibility, and certainly does not speak to any relevant issues in this case."

10

Defense counsel countered that he needed to "attack and give the jury every reason [he] possibly [could] to disbelieve what has been presented to them." Counsel understood that the trial court may rule, "'Hey, this is not relevant,'" and he respected that. The court responded, "it may be a different issue if you are talking about an officer that actually makes an observation of something that involves the criminal act in this case. This officer had no such observation. This officer, basically, took the marijuana from a locker, to the crime lab and the [West Sacramento forensics laboratory used by the defense]. That's all she did. And anything else other than holding a flashlight, she is not really involved in this case."

B. Analysis

"Cross-examination may be employed to elicit any information that may tend to overcome, qualify, or explain the testimony given by a witness on direct examination [citation] as well as to test his accuracy, recollection, knowledge or credibility. [Citation.]" (*People v. Butler* (1967) 65 Cal.2d 569, 575, overruled on other grounds in *People v. Demetrulias* (2006) 39 Cal.4th 1, 22.) But "'[t]he control of cross-examination is within the discretion of the trial court, permitting it to curtail cross-examination relating to matters already covered or irrelevant.'" (*People v. Panah* (2005) 35 Cal 4th 395, 483, quoting *People v. Kronemyer* (1987) 189 Cal.App.3d 314, 352; see *People v. Watson* (1956) 46 Cal.2d 818, 827; *People v. Whitehead* (1952) 113 Cal.App.2d 43, 48.)

Defendant sought to impeach Officer Hampton with the purported discrepancy between her trial testimony that she stayed at cell C-507 from approximately 1:30 to approximately 2:15 or "even longer than that," and her assertion in the document that her search of an unrelated cell "began approximately at 2:00 o'clock."

Defendant claims the trial court abused its discretion by "determining the value and weight" of the claimed discrepancy even though that is "solely the dominion of the jury." (Evid. Code, § 312, subd. (a).) We assume for present purposes that jurors reasonably could view the approximately 15-minute discrepancy as *some* reason to discount Officer Hampton's trial testimony; we do not resolve that issue ourselves. But this begs the question of *which* testimony would be discounted.

Defendant speculates that "trial counsel's further examination of Officer Hampton could have revealed other defects in her credibility, knowledge, and recollection, *perhaps as it relates to her maintenance of the evidence's chain of custody.*" (Italics added.) But at the hearing defendant eschewed any issue of "tampering," including any claim that Officer Hampton was responsible for the different weights measured by the laboratories. Thus, although defendant sought to admit the *time* discrepancy evidence, he never claimed it could be relevant to the *weight* discrepancy or any other chain of custody issue. The trial court had no duty to reach an opposite conclusion.

The trial court properly concluded that, aside from maintaining the

11

chain of custody, Officer Hampton's role in this case was limited to "holding a flashlight" for her fellow officers. Defendant does not claim the time discrepancy somehow impeaches Officer Hampton's testimony on that issue, and no possible impeachment value appears. It follows that the trial court properly excluded the time discrepancy evidence as irrelevant to the present case. There was no abuse of discretion. (*People v. Panah*, *supra*, 35 Cal 4th at pp. 483-484.)

This leaves defendant's claim that the trial court's rulings violated his confrontation rights. The claim has no merit.

"[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." [Citations.] Exclusion of impeaching evidence on collateral matters which has only slight probative value on the issue of veracity does not infringe on the defendant's right of confrontation.' [Citations.] Ordinarily, proper application of the statutory rules of evidence does not impermissibly infringe upon a defendant's due process rights. [Citations.]" (*People v. Ardoin* (2011) 196 Cal.App.4th 102, 119.) Having determined that the trial court complied with relevant statutory rules of evidence, we conclude it did not violate defendant's confrontation rights.

(People v. McDaniels, slip op. at 3-8.) (LD 4.)

### 3. Governing Legal Principles

Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense" and the right to present relevant evidence in their own defense. Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)); Nevada v. Jackson, 569 U.S. 505, 509 (2013). This right is not unlimited, but rather is subject to reasonable restrictions. United States v. Scheffer, 523 U.S. 303, 308 (1998); Alcala v. Woodford, 334 F.3d 862, 877 (9th Cir. 2003). The Constitution permits judges to exclude evidence "if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Holmes, 547 U.S. at 319.

The Sixth Amendment to the United States Constitution grants a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. "The 'main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-

examination.'" Fenenbock v. Director of Corrections for California, 692 F.3d 910, 919 (9th Cir. 2012) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986)). A defendant meets his burden of establishing a Confrontation Clause violation by showing that "[a] reasonable jury might have received a significantly different impression of [a witness's] credibility had . . . counsel been permitted to pursue his proposed line of cross-examination." Id. at 680; Slovik v. Yates, 556 F.3d 747, 753 (9th Cir. 2009).

However, Confrontation Clause violations are subject to harmless error analysis. Whelchel v. Washington, 232 F.3d 1197, 1205-06 (9th Cir. 2000). "In the context of habeas petitions, the standard of review is whether a given error 'had substantial and injurious effect or influence in determining the jury's verdict.'" Christian v. Rhode, 41 F.3d 461, 468 (9th Cir. 1994) (quoting Brecht, 507 U.S. at 637).

4. Discussion

First, the undersigned finds that petitioner cannot obtain habeas relief based on a claim that the trial court improperly excluded Hampton's unrelated cell search report. The Supreme Court "has never held that the Confrontation Clause entitles a criminal defendant to introduce extrinsic evidence for impeachment purposes." Nevada v. Jackson, 569 U.S. at 512. This court is bound by such decision.

Second, the California court's affirmation of the trial court's exclusion of evidence relating to Hampton's search of other cells under California Evidence Code § 352 was not contrary to, or an unreasonable application of clearly established federal law. Section 352, like its federal counterpart, Rule 403 of the Federal Rules of Evidence, is frequently used to exclude evidence where its probative value is far outweighed by the probability that its admission will unduly delay, waste time, or confuse or mislead the jury. The application of section 352 by the trial court to exclude Hampton's evidence or restrict cross-examination of her testimony (Reporter's Transcript ("RT") 74) did not result in a Confrontation Clause violation or violate petitioner's right to present a defense.

As argued by respondent, petitioner's reliance on United States v. Baker, 10 F.3d 1374, 1405-05 (9th Cir. 1993), overruled on other grounds by United States v. Nordby, 225 F.3d 1053

13

1    (9th Cir. 2000), is unavailing. (ECF No. 17 at 18, citing ECF No. 7 at 13.) This court is required

2    to review the state court's decision deferentially under § 2254(d), whereas the Ninth Circuit

3    reviewed the decision in <u>Baker</u> on appeal. In addition, unlike here where the limitation involved

4    non-relevant testimony by a non-percipient witness on cross-examination, in <u>Baker</u>, the court

5    excluded relevant testimony of the expert witness' qualifications to offer an expert opinion.

6    Therefore, <u>Baker</u> is inapposite to the case at bar. In addition, petitioner points to no Supreme

7    Court case finding the defendant's confrontation rights were violated where the trial court

8    excluded evidence after weighing the probative value of the evidence and finding it to be far

9    outweighed by issue confusion or undue delay.

10          The Confrontation Clause guarantees criminal defendants the right of cross-examination,

11   which includes exploration of bias. <u>See</u> <u>Davis v. Alaska</u>, 415 U.S. 308, 315-16 (1974). But such

12   guarantee does not

13                     prevent[] a trial judge from imposing any limits on defense counsel's
14                     inquiry into the potential bias of a prosecution witness. On the
                       contrary, trial judges retain wide latitude insofar as the Confrontation
15                     Clause is concerned to impose reasonable limits on such cross-
                       examination based on concerns about, among other things,
16                     harassment, prejudice, confusion of the issues, the witness' safety, or
                       interrogation that is repetitive or only marginally relevant.

17   <u>Van Arsdall</u>, 475 U.S. at 679. Courts will not find that a due process violation has occurred based

18   on the exclusion of evidence proffered by the defense if the excluded evidence was, among other

19   things, only marginally relevant or repetitive. <u>See</u> <u>Crane</u>, 476 U.S. at 689-90 (judges are granted

20   "wide latitude" in their evidentiary rulings); <u>see also</u> <u>Wood v. State of Alaska</u>, 957 F.2d 1544,

21   1549 (9th Cir. 1992) ("A defendant has no right, however, to present irrelevant evidence."); <u>Perry</u>

22   <u>v. Rushen</u>, 713 F.2d 1447, 1453 (9th Cir. 1983) ("Evidence of little importance, whether merely

23   cumulative or of little probative value, will almost never outweigh the state interest in efficient

24   judicial process."). This determination is because "'the Confrontation Clause guarantees an

25   opportunity for effective cross-examination, not cross-examination that is effective in whatever

26   way, and to whatever extent, the defense might wish.'" <u>Van Arsdall</u>, 475 U.S. at 679 (quoting

27   <u>Fensterer</u>, 474 U.S. at 20). The exclusion of specific lines of cross-examination is not error if

28   there is "no substantial likelihood" that "the jury's impression of [the witness'] credibility" would

1   have been changed.  Sully v. Ayers, 725 F.3d 1057, 1075 (9th Cir. 2013).  Even relevant evidence

2   may be excluded on account of certain evidentiary rules.  Montana v. Egelhoff, 518 U.S. 37, 42

3   (1996).

4   　　　Here, had the trial court allowed such cross-examination, the jury would have heard

5   testimony concerning events that took place four days prior to the recovery of the contraband

6   evidence.  Such testimony would have wasted time and possibly confused the jury with facts not

7   relevant to the specific criminal act at issue in the trial.  Therefore, the trial judge reasonably

8   limited the cross-examination of Hampton to her involvement as custodian of the evidence.

9   Moreover, the record shows that Hampton, as custodian of the evidence, was subject to cross-

10  examination.  (RT 59-70.)  Also, petitioner's defense counsel conceded that there was no issue of

11  tampering with the evidence or other misconduct by Hampton.  (RT 73.)  Contrary to petitioner's

12  claims, denying him the opportunity to cross-examine Hampton as to the timing of the cell

13  searches in the hope that petitioner might develop impeachment evidence did not infringe his

14  right to confrontation or to present a defense.  See Van Arsdall, 475 U.S. at 679 (when some

15  inquiry is permitted, "trial judges retain wide latitude . . . to impose reasonable limits on such

16  cross-examination"); cf. Hayes v. Ayers, 632 F.3d 500, 517-20 (9th Cir. 2011) (defendant's

17  Confrontation Clause rights were not violated by trial court's quashing subpoena of witness'

18  attorney because the testimony of such attorney would have been of low probative value and on a

19  collateral point to impeach a prosecution witness).  Therefore, the state appellate court's

20  affirmation of the trial court's limit on the cross-examination of Hampton was not contrary to, or

21  an unreasonable application of, clearly established federal law.

22  　　　But even assuming, *arguendo*, that the trial court violated petitioner's right to

23  confrontation by limiting the cross-examination of Hampton, any error was harmless because it

24  was not reasonably probable that allowing such cross-examination would have resulted in a more

25  favorable verdict.  Hampton's role in providing a flashlight for other officers to search the cells

26  was peripheral, at best, and therefore the exclusion of evidence as to the timing of the cell

27  searches could have no effect on the verdict.  Petitioner was not precluded from putting on a

28  defense; indeed, he had his own expert witness who testified as to the seized contraband.  In

addition to cross-examining Hampton as to her role as custodian of evidence, petitioner's counsel

cross-examined the officers involved in the contraband surveillance watch, as well as the

prosecution's criminalist.  Officers Guzman and Lofton testified concerning witnessing petitioner

put something in his mouth and later recovering the evidence from petitioner's feces.  (RT 85-88;

98-100.)  Criminalist Anderson provided testimony concerning the analysis of what was

recovered.  (RT 120-21.)  The physical evidence corroborated the testimony of these percipient

witnesses.  Even if the trial judge had allowed defense counsel to continue cross-examining

Hampton on the issue of her presence during the cell searches, such testimony would not have

impacted the evidence that a substance that tested positive as marijuana was recovered from

petitioner's feces four days after the cell searches.  Therefore, it was reasonable for the state

appellate court to find that the limit on cross-examining Hampton did not have a "substantial and

injurious effect or influence" on the jury's verdict.  <u>Brecht</u>, 507 U.S. at 637.

   Accordingly, the state appellate court's rejection of petitioner's first claim was not

contrary to or an unreasonable application of clearly established federal law.  Petitioner is not

entitled to relief on his first claim.

   B. <u>Limit on Cross-Examination – Alleged Fifth Amendment Violation</u>

   Petitioner argues that the limitation on Hampton's cross-examination shifted the burden of

proof from the prosecution to petitioner because petitioner was required to disprove that the

recovered quantity of marijuana was a usable amount under California law.  (ECF No. 7 at 10-

16.)  Petitioner also argues that when he heard Hampton testify in a manner different from what

petitioner knew the facts to be, he "highly considered testifying" that what he swallowed was

tobacco but it was wrapped in content that may have previously contained marijuana which

accounted for the traces of the marijuana.  However, because the trial court limited cross-

examination of Hampton, petitioner contends he was deprived of such defense.  (ECF No. 7 at 15-

16.)

   Respondent counters that petitioner's Fifth Amendment claim is unexhausted because he

did not raise such challenge in any state appellate proceedings or on direct appeal, and therefore

such claim may not be granted.  (ECF No. 17 at 19.)  In any event, respondent argues that such

16

1    claim fails because the jury was properly instructed, and the restricted cross-examination of

2    Hampton had no bearing on the amount of marijuana that was seized.

3         Because petitioner did not raise this claim in state court, there is no reasoned state court

4    decision on petitioner's Fifth Amendment claim.  (LD 1-5.)

5         The exhaustion of state court remedies is a prerequisite to the granting of a petition for

6    writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  A petitioner satisfies the exhaustion requirement

7    by providing the highest state court with a full and fair opportunity to consider all claims before

8    presenting them to the federal court.  Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v.

9    Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985), cert. denied, 478 U.S. 1021 (1986).

10        As argued by respondent, petitioner failed to raise his Fifth Amendment claim in any of

11   his state court proceedings, direct appeal or in a collateral challenge.  Thus, such claim is not

12   exhausted.  That said, a petition may be denied on the merits without exhaustion of state court

13   remedies.  28 U.S.C. § 2254(b)(2).

14        The Due Process Clause of the Fourteenth Amendment "protects the accused against

15   conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

16   crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  Here, the record

17   reflects that petitioner's Fifth Amendment rights were not violated.  The jury was properly

18   instructed on the elements of the crime, as well as what the prosecution had to prove beyond a

19   reasonable doubt.  Initially, the trial judge instructed the jury that petitioner was not required to

20   present evidence because he was presumed innocent, and he did not have to prove he was not

21   guilty.  (RT 43.)  In addition, the court admonished the jury as to the presumption of innocence

22   and the prosecution's burden of proof:

23               The defendant has pleaded not guilty to the charge.  The fact that a
             criminal charge has been filed against the defendant is not evidence
24           that the charge is true.  You must not be biased against the defendant
             just because he has been arrested, charged with a crime or . . . brought
25           to trial.  A defendant in a criminal case is presumed to be innocent.
             This presumption requires that the People prove each element of the
26           crime beyond a reasonable doubt.  Whenever I tell you the People
             must prove something, I mean they must prove it beyond a
27           reasonable doubt.

28   ////

17

1   (RT 46.) The judge further instructed the jury on reasonable doubt. (<u>Id.</u>) Following the close of

2   evidence the jury was again instructed as to the prosecution's burden of proof, as well as the

3   petitioner's presumption of innocence, and his right not to testify. (RT 189-90; 193-94; 196-98.)

4   A jury is presumed to follow its instructions. <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987).

5       Moreover, as discussed above, the limit placed on Hampton's cross-examination was not

6   germane to the facts and evidence underlying petitioner's guilt: petitioner was seen putting

7   something in his mouth and swallowing; following surveillance, contraband evidence was

8   removed from his feces four days later, and was collected by Officer Lofton, not Hampton.

9   Therefore, the limitation on defense counsel's ability to cross-examine Hampton as to the timing

10   of cell searches performed four days prior to the recovery of the contraband evidence could not

11   have shifted the burden of proof to petitioner. Moreover, the prosecutor's expert testified that the

12   substance was marijuana and that there was a usable amount of marijuana. The timing of the cell

13   searches bore no relevance to the quantity or testing of the contraband obtained. Petitioner's self-

14   serving claim that he would have testified that the substance was tobacco does not alter the fact

15   that the jury believed the prosecution's expert testimony as to the nature and weight of the seized

16   substance.

17       For all of these reasons, petitioner is not entitled to relief on his second claim.

18 VI.  <u>Conclusion</u>

19       In accordance with the above, the undersigned denies petitioner's application for a writ of

20 habeas corpus.

21 VII.  <u>Certificate of Appealability</u>

22       The federal rules require a district court that issues an order denying a habeas petition to

23 either grant or deny a certificate of appealability. <u>See</u> Rules Governing § 2254 Cases, Rule 11(a).

24       A judge will grant a certificate of appealability "only if the applicant has made a

25 substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the

26 certificate must indicate which issues satisfy this standard. 28 U.S.C. § 2253(c)(3). "Where a

27 district court has rejected the constitutional claims on the merits, the showing required to satisfy

28 § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find

the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v.</u>
<u>McDaniel</u>, 529 U.S. 473, 484 (2000).

As discussed above, this court finds that petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Moreover, petitioner has not demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack</u>, 529 U.S. at 484. Therefore, the court declines to issue a certificate of appealability.

VIII. <u>Orders</u>

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's application for a petition for writ of habeas corpus is denied; and

2. The court declines to issue the certificate of appealability referenced in 28 U.S.C. § 2253.

Dated: April 4, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/mcda0184.157

19